Good morning, thank God it's Friday, it's been a long week, we've got five more cases that we need to talk about. I'd like to welcome our colleague Judge Ann Conway from the Middle District of Florida. It's not the first time she's assisted us with our oral argument calendar, but we really benefit from her experience and wisdom and very much appreciate her doing that. Senior judges are an essential part of the federal judiciary, they shoulder about 20 percent of the workload of the federal judiciary and they're entitled to just go home and collect a check, but they work for free, so they're a great bargain for the taxpayers and the federal judiciary would really be in a lot of trouble if they weren't here to help us. So whenever we can get a senior judge to help us, we really appreciate it. Counsel, we're familiar with your cases, we've read your briefs, the authorities cited in your briefs, so you don't have a lot of time this morning, but please feel free to get straight to the heart of your argument, we're probably going to have some questions. But be mindful of our traffic lights, when the red light shines, it is time to end. If you're answering a question, though, from us, you'll be on our time, and if you have rebuttal, won't lose it. But do be respectful of our time. We're going to begin with the CB versus NACIB Investments case. Counsel, are you ready? May it please the Court, Naveen Ramachandrappa, along with my co-counsel Matt Stoddard, we're here on behalf of the Pallant CB. I plan to discuss the knowledge element first, then the participation element. I do want to very briefly touch on one important piece of evidence. This is a statement that Vic Amin, the hotel operator and owner, said to a housekeeper, quote, we need the money, the only way you're going to make some money, you've got to get these girls back up here working. And that sentiment, that we've got to get the girls back up and working to make money, informs both the knowledge and participation element, so let's start with knowledge. Now, in our briefs, we've said that knowledge of the specific victim is not required. We think that's the law, but frankly the Court doesn't need to reach that. We think the evidence in this case allows a jury to find that the hotel operator here should have known that Chapel was tracking CB specifically. Yeah, Red Roof seemed to say otherwise, but I'm not sure that that was holding. I agree your Honor, yeah. I think that was probably dicta, but I'm not sure we need to decide it either. I also agree. So, let's go. Does that mean that you disagree with the District Court's position that it was constrained by Red Roof? Yes, I do. I do think if the Court needed to reach the issue, that the language in Red Roof that requires knowledge of a specific victim is dicta and wasn't required to be followed. Yeah, as I take it, your position is the knowledge element, based on the text of the statute, is really knowledge of a violation, that the victim has to be part of the same sex trafficking about which, you know, the hotel would have knowledge, but not particularly knowledge about that particular victim, if you read the text. That's right, and in fact, I think if we're emphasizing the text, it's an act in violation of the TVBRA. An act, right. So, in this case, the evidence... Let's talk about the evidence. Sure, yeah. The evidence that would allow the jury to find that Nassib should have known that Chapel was trafficking CBE starts with the fact that Nassib knew or should have known that Chapel was a sex offender on probation, that he had rented weekly a room for himself for about six weeks, and then he rents a second room nightly, pays for cash, and he tells them... And it's a property that has weekly rentals, right? Weekly and nightly. Well, okay, weekly and nightly. I had thought that the nightly practice was an aberration. Is that right? It is, particularly for Mr. Chapel, who had been staying weekly. And the aberration, to the extent that it is an aberration, it's unusual. For example, one of the housekeepers testified that they even had people paying basically for like 30 minutes, which is a clear indication of prostitution and sex trafficking. So you've got Chapel saying, I want to rent this room, this additional room right next to my room. Housekeepers don't come in. Adjoining room. Exactly. Well, I think they're right next to each other. I don't think it's one of those where you can kind of go in between. I think you actually have to go outside. Okay. And that matters because the fact that he is in this very suspicious, unusual circumstance, our expert, Mr. Tallis, says that that should have been a bright red flag to monitor. And so part of that monitoring would have been seeing Mr. Chapel go in and out of the room, four different Johns going in through the room. So that happens over a two-day period. The circumstances are it's a 15-year-old girl, a black female, and Chapel is a 48-year-old man. Those are very suspicious circumstances. So much so. Tell me what we're to make of the placement of all the sex offenders in the same area and the direction to clean the rooms of sex offenders and prostitutes only once a week, report prostitution only to a mean and not to the police. Yeah, all of that goes to show knowledge, constructive knowledge, so they know that the sex offenders present this risk. In fact, many of the housekeepers and front desk people would tell guests if they were staying on the sex offender wing of the property. And it also goes to show participation. I'm going to get to the participation element, and maybe I should just transition there in a moment. But that also shows that it's more than just room rentals, that they're actually assisting and facilitating. And the district court judge in this case uses the word enabling, that they have these practices that make that. So when Chapel asks for these things and then they deliver it, those are all ways that they should have known that CB was a specific trafficking victim, and had they used reasonable care, they would have found that. So let me transition now to the participation element. Again, a very similar thing you're going to hear from me. We've stated our position in the briefs that a hotel renting rooms directly to the traffickers is enough to satisfy the participation element. I don't think the court needs to reach that question in this case. Yeah, I'm not so sure about that. In any event, that issue doesn't need to be reached by this court, because as Your Honor has just outlined, some of the evidence that's included in this case is assigning the sex offenders and the prostitutes to one area of the property, directing housekeepers not to enter. And then in this specific instance, Chapel said, don't clean the room, and they complied with that. And the quotation that I led with, and it's the important one, this is not just the hotel operator saying, you know, these things are happening, and we're doing our best and we can't fix it. The jury is entitled to find that the reason that they were turning a blind eye is because they knew you've got to get these girls back up here and working. We need the money. That is affirmative participation in the venture. And I think the district court's conclusion that there weren't these steps, that's exactly what we have here. We have more than enough evidence for the jury to find that the participation element is satisfied in this case. And that distinguishes this case from the Doe v. Redruth case where the court was dealing only with the franchisors and not with the hotel operators specifically. Well, that was really my question. I mean, in Redruth, Judge Jordan, in his concurrence, I think makes an effort to make that distinction in terms of who is the defendant. But again, the district court, as far as I interpret the decision, still felt that it was limited in terms of what constitutes participation. So again, is it your position that there's no need to address the interpretation, or is it that there is? Well, I think it should be addressed to give clarity to other district courts that it was just wrong. I mean, just as a matter of the facts presented in Redruth, there were no claims in that appeal against the hotel operators directly, which is why I think Judge Jordan said that in his concurrence to emphasize that it would be different if they did. And I think in the opinion that Judge Brasher wrote on behalf of the court, he also, or the opinion also, cites two district court cases in other circuits where it was directly involving the hotel operators. The Seventh Circuit, for example, has described that if a hotel operator is directly providing the rooms, that that's, quote, direct participation, and that's not even required. So disagree with the district court's conclusion that it was bound. We don't think it constitutes precedent, but we also do think it's important to give that direction that they are not bound by that. That that wasn't the holding of the case and that they are free to consider these based on the facts of the case. So unless there's any other questions, I'll reserve the remaining time. I want to make sure I understand one thing. You said you didn't think we had to decide whether the hotel would have had knowledge of this particular victim. Is your best evidence for their at least constructive knowledge of this particular victim? What, don't clean that room? No, it's if they had been. So our expert, Alan Tallis, has said that all these huge red flags, you should have had someone monitoring, and that would include looking at the cameras. They have surveillance cameras, so they would see people coming in and out of the rooms, multiple johns. There was a housekeeper that made direct eye contact, according to our client, with CB. And so if she had not gotten the message that, you know, just let the girls work, and instead noticed and said, this is a 15-year-old girl, just turned 15, with a 48-year-old man that maybe somebody needed to call the police. And, in fact, there was a probation officer that came that day, or the next day, at 4 o'clock and found an image of CB on the computer of Mr. Chappelle. And if someone had told the probation officer, hey, this person rented another room, the probation officer and the police could have easily checked that. So all the troubling signs that we talked about are all evidence that a jury could conclude, had you been investigating, you would have learned that CB was being trafficked, and that would satisfy the requirement in this case. Any questions? Okay. Thank you. Thank you. Thank you. Ms. Daniel. May it please the Court. Lori Webb Daniel, representing Defendant Nassib. To be clear, sex trafficking is a horror, particularly if it involves a minor. With the TVPRA, Congress, it did enact some criminal penalties and a remedy, but it's in a very specific statutory scheme. This is not a general tort law. It requires predicate violations. Here, the predicate violations are Section 1591, sex trafficking of a minor, and Section 1589, forced labor. The TVPRA liability, civil liability, is not triggered by prostitution. It's not what it says. Well, you already had a criminal conviction here for sex trafficking, so why isn't that element just satisfied? Why are you dedicating some time to that issue? Well, the conviction was the trafficker, not the hotel. Right, but in terms of the commission or the person, the plaintiff being subjected to this kind of criminal behavior, and therefore the statutory violation has been established. There's no dispute about that, Your Honor. The question is participant liability, not perpetrator liability, and that you look to what's happened. It seems to me that this is pretty broad language in a sense. Whoever knowingly benefits financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter. So this really turns, does it not, on participation and knowledge? Factors two and factors four of Red Roof. The participation requires some joint action. The key takeaway from Red Roof on that— And knowledge. I do. I'm with you, Your Honor. That's exactly right. My key takeaway that you should focus on in Red Roof on that second factor, the participation. Knowledge does not equal participation. And this is not just Red Roof. The Seventh Circuit majority opinion in what I call Salesforce, that's TG, also had a note. Passive nonfeasance is not enough to trigger liability. But they alleged more than that. They alleged more than just you are aware, but that rooms were being cleaned on a time basis so that more activities could occur. I mean, so it seems like it's not just they were aware, but that there were some affirmative steps taken to advance the venture. Well, let me address some of that. Tillis, the expert that plaintiffs has relied on, says sex offenders, that does not equate to sex trafficking. It's a different thing. Housing a sex offender is not prohibited by the TVPRA. But that wasn't, I think, again, I know that some of the cases and issues have been consolidated. My recollection for this case is that there was actually testimony from the employees that they didn't have an issue with the registered sex offenders. It was those who were engaged in trafficking that were posing the problem. Well, there wasn't any specific. And let me just suggest to you also, I mean, on the participation, a vertical relationship where you're just paying for normal off-the-shelf services like running a room. So running a room next door for the day when you're weekly is normal participation in hotel management? So it's not the type of action that is liability under the TVPRA. I thought Amin testified that that was, admitted that that was a mistake, that the second room was a mistake. Well, maybe for best practices it would be. But we've got to look at the statute, and it's particular. And let me speak also to the specific victim requirement. Now, I thought Judge Brasher did a great job tracking the statute, the flow of an underlying act. But let me say something. Again, I'm going to tell you about the Seventh Circuit case because that's their main one. It also noted that where you have a single alleged single victim and you've got to show an act, you've got to show constructive knowledge as to that person. Yeah, I mean, I'm reading the statute, though, Ms. Daniel. And first of all, I don't think, Judge, I think everything that's decided in Red Roof binds us. Every holding of Red Roof binds us. I don't quarrel with that. And frankly, I think got it right on every holding. It doesn't matter if I think it's right or not, but I do think it's right. But I don't think this was holding when it said knowledge of this particular victim. And here's what the statute says. The statute says that they knew or should have known has engaged in an act in violation of this chapter. Exactly, Your Honor. It doesn't say. No. That's general acts. They know there's sex trafficking going on. Their participation in it may have to be specific with respect to this particular victim. But knowledge of this particular victim, I'm not so sure. No, of the sex trafficking. So the venture, as specified here in this complaint, is renting a room to this guy Chappell. That's the venture. Okay. So the requirement for constructive knowledge requires at least constructive knowledge that the venture has engaged in a violation, has engaged in a violation of the chapter here, sex trafficking of a minor or forced labor. Okay, so the act for this venture of renting a room to Chappell would have to be sex trafficking. And, Your Honors, it also uses the phrase has engaged. These rooms were rented before CB ever came to the property. Even that second room, the horrible violations of the statute did not occur until after there had been payment of cash for these rooms. So it doesn't fit. It just doesn't fit this box. And also, the probation officer was there that day twice, didn't pick up on it. They're the ones who are supposed to investigate and enforce things. The evidence is that when Mario, when Amin was told Mario was doing this sex trafficking, he was kicked out immediately. That's not a joint venture to profit from sex trafficking. The girl, when the hotel found out that girl, that runaway girl, was there with the disguise, high neck. No, not the hotel. One of the employees who had already told the owner that this was happening and who didn't do anything, it was the employee, the same employees who testified against your client to say that there was actual knowledge, not just constructive. I think that's an important distinction. Well, Your Honor, the manager of the hotel did not have knowledge. There was no evidence to show he had knowledge. So we're talking about constructive knowledge. This quote that my colleague on the other side, Vivi, gave, it's referring to prostitution, but prostitution is not the same thing as minor sex trafficking. And so what it comes down to, they're really their best evidence to tie the hotel in with CB. And keep in mind, she was there 24 hours. She came at night. There's nothing to show that they saw her, that any employee of the hotel saw her. We've got a couple of seconds of eye contact when CB was holding the door open for a John to check out the room. Apparently both fully closed because there was absolutely no allegation that there was anything like that other girl. Well, it may be worth going through the facts, but again, I interpreted the district court's decision as concluding that there were sufficient facts generally to show that there was some kind of bad act, but that the Red Roof decision constrained the court in terms of as a matter of law. And now it appears that if indeed that constraining belief was based on dicta, then it seems that summary judgment wasn't proper. Well, let me suggest this. I want to suggest what, if you adopt the plaintiff's position, how it could lead to some bizarre results. Now, let's just say there was a pizza shop at the corner. Mom and Pop Pizza Shop. And they're asked to deliver pizza, and they do it regularly. Mom makes the pizza pop, delivers it, doors open, inside clear. Not what we have here, but I'm just saying, you know, maybe a bunch of Johns, clearly a child. They deliver the pizza, get a tip, go back. Can they be liable under the TBPI? You're saying you're equating feeding perpetrators with housing, cleaning, selling products so that you can engage in the behavior. Is that the analogy? The analogy is renting a room, and renting a room to a sex offender does not give rise to inference that they're sex trafficking. There's no such thing as a generalized violation of the TVPRA. It is a very specific statute. And the predicate acts also are very specific. Now, I want to mention, because my time is getting short here, going back to victim-specific knowledge and why Red Roof is a factor for on that victim-specific is correct. And it's a matter of statutory interpretation, parenthetical. The participant liability is in a parenthetical. A parenthetical with regard to statutory construction, there's a helpful recent case out of this court, Glover v. I think it's Ocuin-Lone, 127-F4-1278. At 1289, Judge Wilson addresses parentheticals. They tend to be illustrative of the word preceding. So the statutory interpretation or the amicus brief. They tend to be. But, I mean, these parentheses seem to me to be performing more in the nature of what commas would and separating another kind of defendant other than the actual perpetrator. That is, one who knowingly benefits financially or by receiving anything of value from participation in a venture. Everything that I read earlier. I mean, that's not illustrative. Well, let me refer, Your Honor, to other sections. The amicus brief is helpful to this, but 1595C2 has a statute of limitations that's tied to the age of the victim. There's also 1595B, which will stay, requires staying of the civil action if there's a pending criminal case. These are the statute that, as a whole, shows a lot of victim-specific information. But, again, I think that Judge Totenberg was concerned about, would there ever be a way you could have constructive knowledge liability? But there are scenarios, and it's good that there are remedies for these scenarios, but scenarios are pretty horrible. The Riccio case is one example where the high fives, there had been an actual more of a horizontal venture, an actual venture that was established, that had been established. Well, I mean, some could say I think the word inaberration was used. That might be, I mean, I think Congress's findings were included, that this behavior happens surreptitiously, it happens in secret. And so to rely on the more obvious or conspicuous behavior, I'm not sure that that's the way to go in terms of making sure that this statute has any real effect. Well, Your Honor, there could be other, what I'm saying is there could be victims who are not identified where you would have the kind of circumstances that you would have. But here, Your Honor, may I finish? Yeah, of course.  Yeah, it's just here, it just falls short. I mean, the 24 hours, just to use an example, I mean, I sometimes do not disturb more than a day when I'm working, preparing for an oral argument, for example. There are, every one of these other facts that they're pointing to, it just falls short in this case. Well, shouldn't a jury decide that? No, Your Honor, I think the evidence just doesn't rise to the level of a jury question. You know, for the reasons I said, it's a vertical relationship. What they're pointing to does not show a violation of the Act with respect to this venture. This venture, it has to be this venture. This language, you would agree, would you not, Ms. Daniel, that this language, the statutory language that's in the parenthetical about someone who is financially benefiting from participation in the venture, clearly contemplates some who would be in a vertical relationship. Yes, Salesforce stressed, and that is their best case, stressed that— I mean, I just wanted a yes or no. Yes, you concede that, right? Yes, but it has to be a customized, something that's not renting a hotel room. That's just not enough. Yeah, I don't know that renting a hotel room is enough. The real question is whether there's a lot more here. I don't think we have any more questions. You've been on our time, so your— Thank you, Your Honor. Thank you. Your friend on the other side saved three minutes for rebuttal. Just three brief points on the statutory question. I think if you look at the 2008 amendment, you'll see that everything that's in the, quote, parentheses, that's the entire amendment, so it would render the 2008 amendment useless if we just said parentheses don't count there. Number two— I don't know how I could read that as illustrative. Yeah, I just wanted to be clear about the legislative history in terms of the statute changes. Number two, my good friend Lori Webb Daniel is not a registered sex offender. When she puts a Do Not Disturb sign on her door, that's much different than a registered sex offender that they knew or should have known was a sex offender renting a second room, getting customized service, and I don't want anything— At a nightly rate, don't clean the room. Exactly right. So third point is there was an attempted distinction between prostitution and trafficking under the statute. This clearly involves a minor, and so any commercial sex with a minor is enough. There's more than enough evidence a jury could conclude that Nassib should have known she was a minor. One of the Johns actually didn't have sex with her because he wanted to see some ID, and you know who doesn't have an ID? Someone who just turned 15 and didn't even have a learner's permit. And there was a later incident at a different hotel where another John, again, wouldn't have sex with her because she was underage. So, I mean, it's just open your eyes and you see it. Thank you, Your Honor. Thank you. We understand your case. We're going to move to our second case. There's no one. There's no one. And she was underage. There's a rise to your claim. Yeah. Not that she didn't do wrong. Not that she's a minor. I'm guarding her. I'm going to stretch her for a second.  There you go. Thank you. So we've got another one.